UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JAY BRADSHAW,

                                    Plaintiff,

                                                                    9:21-CV-0776
v.                                                                 (GTS/ML)

C.O. PHILLIP; MALETTE; HANNA; GAISER;
DANIEL; and JOHN DOES,

                                    Defendants.
_____

APPEARANCES:

HARRIS BEACH, PLLC                         DANIEL R. LeCOURS, ESQ
  Counsel for Plaintiff                        ELLIOT A. HALLAK, ESQ.
677 Broadway, Suite 1101
Albany, NY 12207

HON. LETITIA JAMES                         DAVID C. WHITE, ESQ.
Attorney General for the State of New York     Ass't Attorney General
Attorney for Defendants
The Capitol
Albany, NY 12224

GLENN T. SUDDABY, Chief United States District Judge

## DECISION AND ORDER

### I.      INTRODUCTION

          On or about July 4, 2021, Plaintiff Jay Bradshaw commenced this action pro se by

filing a civil rights complaint against numerous state employees of Upstate Correctional

Facility pursuant to 42 U.S.C. § 1983 ("Section 1983"), together with an application to

proceed in forma pauperis ("IFP"), and a motion for preliminary injunctive relief.  Dkt. No. 1

("Compl."); Dkt. No. 2 ("IFP Application"); Dkt. No. 4 ("First Preliminary Injunction Motion").

By Decision and Order entered on September 3, 2021, this Court granted plaintiff's IFP

Application in accordance with 28 U.S.C. § 1915(g) ("Section 1915(g)"), and, following review of the complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b), dismissed some of plaintiff's claims (and terminated some of the defendants), and directed service and a response for the claims against the named defendants that survived sua sponte review, as well as the First Preliminary Injunction Motion.  Dkt. No. 6 ("September 2021 Order").[1]

Thereafter, and prior to the completion of service, plaintiff filed an amended complaint, a second motion for preliminary injunctive relief, and a supplemental complaint.  Dkt. No. 9 ("Am. Compl."); Dkt. No. 10 ("Second Preliminary Injunction Motion"); Dkt. No. 11 ("Supp. Compl.").[2]  On November 1, 2021, counsel for the defendants filed an opposition to the preliminary injunction motions and cross-motion to revoke plaintiff's IFP status, which plaintiff subsequently opposed.  Dkt. No. 22 ("Opposition to Injunction Motions and Cross-Motion to Revoke Plaintiff's IFP Status"); Dkt. No. 28 ("Response to Cross-Motion to Revoke IFP Status").  At the time, a cross-motion to revoke plaintiff's IFP status was pending in *Bradshaw v. Gordon*.  *See Bradshaw v. Gordon*, Dkt. No. 16.

On November 4, 2021, the Court determined that an evidentiary hearing on defendants' cross-motions to revoke plaintiff's IFP status in this case and *Bradshaw v.*

---

[1]  Roughly five weeks before this action, plaintiff commenced a prior action in this District.  *Bradshaw v. Gordon*, No. 21-CV-0645 (N.D.N.Y. filed June 3, 2021) ("*Bradshaw v. Gordon*").  Initially, this action was assigned to United States District Judge David N. Hurd and United States Magistrate Judge Therese Wiley Dancks. However, by Order entered on July 27, 2021, it was reassigned to the undersigned and United States Magistrate Judge Miroslav Lovric based on a determination that it is related to *Bradshaw v. Gordon* under the District's General Order 12.  *See* Dkt. No. 5.

[2]  Even assuming plaintiff was permitted to file the amended complaint as of right, even the most liberal constructions of the amended complaint does not yield factual allegations plausibly suggesting an imminent danger of serious physical injury at the time of the filing of this action (on July 4, 2021) that are substantively different from those alleged in his original complaint.  (Compare Dkt. No. 1 with Dkt. No. 9.)  For this reason, when summarizing his allegations and claims below in Part II.A. of this Decision and Order, the Court does not treat the factual allegations of plaintiff's amended complaint as substantively different from those of his original complaint.  The Court does, however, acknowledge certain new allegations contained in the amended complaint.

*Gordon* was necessary.  As a result, the Court issued an Order in both cases scheduling a consolidated evidentiary hearing.  *See* Dkt. No. 25; *Bradshaw v. Gordon*, Dkt. No. 23.

Following these Orders, counsel was appointed for, and appeared on behalf of, plaintiff.  Dkt. Nos. 29, 30, 31; *see also Bradshaw v. Gordon*, Dkt. Nos. 25, 26, 27.  On December 15, 2021, the Court held the consolidated evidentiary hearing.

Currently before the Court are the following: (1) plaintiff's preliminary injunction motions; and (2) defendants' Cross-Motion to Revoke Plaintiff's IFP Status.

## II.    BACKGROUND

### A.    Overview of the Complaint

Generally speaking, plaintiff's complaint alleges that various corrections officials from Upstate Correctional Facility denied him ten out of eleven meals over a three-and-a-half-day period between July 1 and July 4, 2021.  Compl. at 3-5.  The amended complaint also alleges that two nurses passed plaintiff's cell on July 4 and July 5, 2021, and refused his requests for medical treatment.  Am. Compl. at 4.

The complaint further alleges that between June 11 and July 4, 2021, plaintiff was confined in a "filthy dirty" cell that "smell[s] of urine and feces" and denied cleaning supplies, toothpaste, a toothbrush, and a pen, and on June 18, June 24, and July 1, 2021, plaintiff was subjected to an excessive use of force.  Compl. at 2-5.  The amended complaint alleges that plaintiff was provided with cleaning supplies on July 6, 2021, and a toothbrush and toothpaste on July 11, 2021.  Am. Compl. at 3.

According to plaintiff, as a result of not having toothpaste or a toothbrush, one of his teeth has begun "eroding [and] decaying[,]" which "has caused [him] extreme and constant

3

pain[,]" and as a result of being deprived of food, he experienced "severe stomach pains, physical weakness, headaches, nuasea [sic], and mental anguish[.]"  Compl. at 2, 4.

### B.    Initial Determination of Imminent Danger

Prior to commencing this action, plaintiff had filed at least twenty other civil actions in the district courts in the Second Circuit since 2008.  September 2021 Order at 3-4.  In at least four of those actions, plaintiff acquired "strikes" as defined in 28 U.S.C. § 1915(g) ("Section 1915(g)").[3]  *Id*. at 4 n.5.  Notwithstanding this determination, plaintiff's IFP Application was granted because the Court found that the allegations in the complaint were sufficient, albeit barely, "to plausibly suggest that [plaintiff] was 'under imminent danger of serious physical injury' when he signed his complaint on July 4, 2021."  *Id*. at 6.  The Court, however, noted that "this is a preliminary finding which defendants are entitled to challenge or refute in future filings."  *Id*. (stating further that "plaintiff's IFP status will be revoked if, as the case progresses, it is determined that he did not face 'imminent danger' when he commenced this action or is otherwise not entitled to proceed IFP").

### C.    Overview of Plaintiff's First and Second Preliminary Injunction Motions

Plaintiff's First Preliminary Injunction Motion relates to alleged use-of-force incidents and meal and hygiene deprivations, and seeks an order directing defendants to provide him with "all meals[, and] . . . cease from using food as a means of punishment[,]" as well as

---

[3]  The actions in which plaintiff acquired strikes are as follows: (1) *Bradshaw v. McQueen*, No. 08-CV-5518, Dkt. No. 32 (S.D.N.Y. Feb. 11, 2010) (dismissing complaint for failure to state a claim upon which relief may be granted); (2) *Bradshaw v. Brown*, No. 13-CV-4308, Dkt. No. 52 (E.D.N.Y. May 18, 2017) (Mandate dismissing appeal of dismissal order on grounds that it lacked "an arguable basis either in law or in fact"); (3) *Bradshaw v. The City of New York*, No. 15-CV-2166, Dkt. No. 58 (E.D.N.Y. Aug. 22, 2017) (dismissing complaint for failure to state a claim upon which relief may be granted); (4) *Bradshaw v. The City of New York*, No. 15-CV-2166, Dkt. No. 62 (E.D.N.Y. Nov. 16. 2018) (Mandate dismissing appeal on grounds that it lacked "an arguable basis either in law or in fact").

reformation of use-of-force policies at Upstate Correctional Facility.  *See* First Preliminary Injunction Motion at 1, 3.  Plaintiff's Second Preliminary Injunction Motion relates to the use-of-force incident that allegedly occurred on July 1, 2021, and seeks an order directing defendants to "cease from all efforts to orchestrate an attack against [him,] [and] refrain from any and all forms of retaliation against [him,]" as well as an order that he be transferred to another facility.  *See* Second Preliminary Injunction Motion at 1.

### D.    Overview of Defendants' Opposition and Cross-Motion, and Plaintiff's Response

Defendants argue that plaintiff's request for injunctive relief should be denied because he has failed to establish that he will suffer irreparable harm in the absence of the preliminary injunctive relief that he seeks.  Dkt. No. 22 at 7-9.  In support of this argument, defendants have adduced record evidence showing that (1) plaintiff has never been denied meals at any point, (2) plaintiff accepted all of his meals between September 23 and 30, 2021, and (3) plaintiff's medical records do not contain any indication that his health is at risk due to missed meals, and (4) plaintiff was not subjected to an unnecessary use-of-force by defendant Phillips on July 1, 2021.  Dkt. No. 22-2; Dkt. No. 22-3; Dkt. No. 22-4; Dkt. No. 22-5; Dkt. No. 22-6; Dkt. No. 23.

Defendants separately argue that plaintiff's IFP status should be revoked because he did not face imminent danger when he filed the complaint.  Dkt. No. 22 at 9-10.  In support of this position, defendants have adduced record evidence, including sworn statements, cell block log books, the New York State Department of Corrections and Community Supervision ("DOCCS") Directive on Inmate Hunger Strikes, and plaintiff's medical records, which show, among other things, that (1) plaintiff was offered meals between July 1 and July 4, 2021,

which he refused, (2) plaintiff received dinner on July 1, breakfast on July 2, and breakfast and lunch on July 4, 2021, and (3) plaintiff never complained to medical staff about malnourishment despite bringing other complaints to staff during this time period.  Dkt. No. 22-2; Dkt. No. 22-3; Dkt. No. 22-4; Dkt. No. 22-6; Dkt. No. 23.

In his response to defendants' cross-motion to revoke his IFP status, plaintiff has submitted a sworn statement wherein he attempts to refute certain factual information contained in defendants' documentary evidence, including the evidence showing that he received certain meals between July 2 and July 4, 2021, and refused all meals he missed between July 1 and July 4, 2021.  Dkt. No. 28.  Plaintiff also submitted certain exhibits with his response.  Dkt. No. 28 at 13-39.  In addition, plaintiff's complaint is verified.  Compl. at 5.

### E.    Evidentiary Hearing

The Court held an evidentiary hearing on defendants' motion to revoke plaintiff's IFP status on December 15, 2021.  (Text Minute Entry filed Dec. 15, 2021.)  At the hearing, the following four witnesses testified (and were cross-examined): (1) plaintiff; (2) Corrections Officer Michael Phillips; (3) Corrections Sergeant Eric Marshall; and (4) Nurse Brenda Holcombe.  (Id.; Dkt. Nos. 47, 48.)  In addition, the following eight exhibits were marked for identification: (1) Exhibit P-3 (Upstate Correctional Facility's SHU Incarcerated Individual Orientation Manual); (2) Exhibit P-4 (Declaration of Michael Phillips, dated October 6, 2021, and exhibits thereto); (3) Exhibit P-5 (Log Books for May 28-31, 2021, and July 1-5, 2021, Bates Stamped 000034-68); (4) Exhibit P-9 (Plaintiff's Supplemental Complaint, Case No. 21-CV-0776, dated September 18, 2021, and exhibits thereto); (5) Exhibit D-1 (Plaintiff's ambulatory health record); (6) Exhibit D-2 (Upstate Correctional Facility Cell Block 10 Logbooks); (7) Exhibit D-6 (Plaintiff's Complaint, Case No. 21-CV-0776); and (8) Exhibit D-9

6

(Plaintiff's Complaint, Case No. 21-CV-0645.  (Text Minute Entry filed Dec. 15, 2021; Dkt. Nos. 47, 48.) The hearing lasted approximately two-and-a-half hours.  (Text Minute Entry filed Dec. 15, 2021.)

## III.     RELEVANT LEGAL STANDARDS

### A.     Motions for Injunctive Relief

Preliminary injunctive relief "'is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.'" *Moore v. Consolidated Edison Co. of New York, Inc.*, 409 F.3d 506, 510 (2d Cir. 2005) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)).  The standard a court must utilize in considering whether to grant a request for injunctive relief is well-settled in this Circuit. *Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35, 38 (2d Cir. 2010).  To prevail on a motion for preliminary injunctive relief, a plaintiff must demonstrate irreparable harm and either a substantial likelihood of success on the merits of the claim, or sufficiently serious questions going to the merits and a balance of hardships tipping decidedly in his favor.  *Id*. at 35; *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 405-06 (2d Cir. 2011).  However, when the moving party seeks a mandatory injunction that alters the status quo by commanding a positive act, the burden is "even higher."  *Cacchillo*, 638 F.3d at 405-06; *Jolly v. Coughlin*, 76 F.3d 468, 473 (2d Cir. 1996).  Thus, a mandatory preliminary injunction "should issue only upon a clear showing that the moving party is entitled to the relief requested, or where extreme or very serious damage will result from a denial of preliminary relief."  *Citigroup Global Markets*, 598 F.3d at 35 n.4 (internal quotation marks omitted).

7

"'A showing of irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction.'" *Faiveley Transport Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009) (quoting *Rodriguez v. DeBuono*, 175 F.3d 227, 234 (2d Cir. 1999)). Generally an alleged violation of a constitutional right creates a presumption of irreparable harm. *Jolly v. Coughlin*, 76 F.3d 468, 482 (2d Cir. 1996). However, speculative, remote or future injury is not the province of injunctive relief. *Los Angeles v. Lyons*, 461 U.S. 95, 111-12 (1983). Rather, a plaintiff seeking to satisfy the irreparable harm requirement must demonstrate that "absent a preliminary injunction [he or she] will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm." *Bisnews AFE (Thailand)*, 437 Fed. App'x at 58 (quoting *Faiveley*, 559 F.3d at 118); *Garcia v. Arevalo*, No. 93-CV-8147, 1994 WL 383238, at *2 (S.D.N.Y. June 27, 1994) ("It is well settled that an allegation of the mere possibility of irreparable harm is insufficient to justify the drastic remedy of preliminary injunction. . . . A party who seeks the extraordinary remedy of a preliminary injunction must show the alleged irreparable harm to be imminent, not remote or speculative, and the alleged injury to constitute one that is incapable of being fully remedied by monetary damages." (citations omitted)). A finding of irreparable harm cannot be based solely on past conduct. *Haden v. Hellinger*, No. 9:14-CV-0318, 2016 WL 589703, at *1 (N.D.N.Y. Feb. 11, 2016).

The district court has wide discretion in determining whether to grant preliminary injunctive relief. *Moore v. Consol. Edison Co. of New York, Inc.*, 409 F.3d 506, 511 (2d Cir. 2005). "In the prison context, a request for injunctive relief must always be viewed with great caution so as not to immerse the federal judiciary in the management of state prisons." *Fisher v. Goord*, 981 F. Supp. 140, 167 (W.D.N.Y. 1997) (citing *Farmer v. Brennan*, 511 U.S.

8

825, 846-47 (1994)) (other citations omitted).

### B.   The "Three Strikes" Rule and Imminent Danger Exception

Where a plaintiff seeks leave to proceed IFP, the Court must determine whether the plaintiff has demonstrated sufficient economic need to proceed without prepaying, in full, the Court's filing fee of four hundred and two dollars ($402.00).[4]   The Court must also determine whether the "three strikes" provision of Section 1915(g) bars the plaintiff from proceeding IFP and without prepayment of the filing fee.[5]   More specifically, Section 1915(g) provides as follows:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g).

The "imminent danger" exception protects a prison inmate exposed to potential "serious physical injury" from the consequences of his earlier mistakes in filing frivolous litigation.   Congress enacted the imminent danger exception contained in the final phrase of § 1915(g) as a "safety valve" to prevent impending harms to prisoners otherwise barred from

---

[4]   "28 U.S.C. § 1915 permits an indigent litigant to commence an action in a federal court without prepayment of the filing fee that would ordinarily be charged."   *Cash v. Bernstein*, No. 09-CV-1922, 2010 WL 5185047, at *1 (S.D.N.Y. Oct. 26, 2010).   "Although an indigent, incarcerated individual need not prepay the filing fee . . . at the time of filing, he must subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate accounts."   *Id.* (citing 28 U.S.C. § 1915(b); *Harris v. City of New York*, 607 F.3d 18, 21 (2d Cir. 2010)).

[5]   The manifest intent of Congress in enacting Section 1915(g) was to curb prison inmate abuses and to deter the filing of multiple, frivolous civil rights suits by prison inmates.   *Tafari v. Hues*, 473 F.3d 440, 443-44 (2d Cir. 2007).   The question of whether a prior dismissal is a "strike" is a matter of statutory interpretation and, as such, is a question for the court to determine as a matter of law.   *Tafari*, 473 F.3d at 442-43.

9

proceeding in forma pauperis.  *Malik v. McGinnis*, 293 F.3d 559, 563 (2d Cir. 2002).  "[F]or a prisoner to qualify for the imminent danger exception, the danger must be present when he files his complaint–in other words, a three-strikes litigant is not excepted from the filing fee if he alleges a danger that has dissipated by the time a complaint is filed."  *Pettus v. Morgenthau*, 554 F.3d 293, 296 (2d Cir. 2009) (citation omitted); *see also Polanco v. Hopkins*, 510 F.3d 152 (2d Cir. 2007) (imminent danger claims must be evaluated at the time the complaint is filed, rather than at the time of the events alleged).  In addition, "§ 1915(g) allows a three-strikes litigant to proceed [in forma pauperis] only when there exists an adequate nexus between the claims he seeks to pursue and the imminent danger he alleges."  *Pettus*, 554 F.3d at 296.  In deciding whether such a nexus exists, the Second Circuit instructs the courts to consider "(1) whether the imminent danger of serious physical injury that a three-strikes litigant alleges is *fairly traceable* to unlawful conduct asserted in the complaint, and (2) whether a favorable judicial outcome would *redress* that injury."  *Id*. at 298-99.  Both requirements must be met in order for the three-strikes litigant to proceed in forma pauperis.  *Id*.

Generally speaking, the allegations relevant to the imminent danger inquiry "are those in which [plaintiff] describes physical injury, threats of violence, and deprivation of medical treatment."  *Chavis v. Chappius*, 618 F.3d 162, 165 (2d Cir. 2010).  Although the Second Circuit has cautioned against "an overly detailed inquiry into whether the allegations qualify for the exception," *id*. at 169-70 (*quoting Andrews v. Cervantes*, 493 F.3d 1047, 1055 (9th Cir. 2007)), when a defendant challenges a prisoner's claim of imminent danger, a district court may "reexamine" its provisional determination of imminent danger and "conduct a

narrow evidentiary inquiry into the prisoner-litigant's fear of imminent danger" at the time of filing. *Shepherd v. Annucci*, 921 F.3d 89, 94-95 (2d Cir. 2019). If the evidentiary submissions show the plaintiff's explanation for why he was in imminent danger to be "ridiculous," "conclusory," or "without foundation[,]" the district court may revoke the plaintiff's previously granted IFP status. *Id*. at 95, 97; *see also Chavis*, 618 F.3d at 170 ("A court may find that a complaint does not satisfy the 'imminent danger' exception if the complainant's 'claims of imminent danger are conclusory or ridiculous.'") (quoting *Ciarpaglini v. Saini*, 352 F.3d 328, 331 (7th Cir. 2003)); *Nelson v. Nesmith*, No. 9:06-CV-1177 (TJM/DEP), 2008 WL 3836387, at *5 (N.D.N.Y. Aug. 13, 2008) ("The imminent danger claimed by the inmate . . . must be real, and not merely speculative or hypothetical."); *accord, Welch v. Selsky*, No. 9:06-CV-0812 (LEK/DEP), 2008 WL 238553, at *5 (N.D.N.Y. Jan 28, 2008); *Gamble v. Maynard*, No. 9:06-CV-1543 (DNH/DEP), 2008 WL 150364, at *4 (N.D.N.Y. Jan. 14, 2008).

## IV.    ANALYSIS

### A.    Plaintiff's Preliminary Injunction Motion

As noted, plaintiff seeks preliminary injunctive relief based on alleged meal and hygiene deprivations, as well as unwanted force used against him. Upon review, the Court finds that plaintiff has failed to meet the heavy burden for a mandatory injunction.

As an initial matter, insofar as plaintiff seeks injunctive relief based on the deprivation of hygiene supplies and conditions of his cell, plaintiff's underlying Eighth Amendment claim against defendants Woody and Uhler based on the alleged denial of cleaning and personal hygiene supplies was previously dismissed. *See* September 2021 Order at 15-17. Thus, there is no possibility that plaintiff can establish a likelihood of success on the merits of this

claim.[6]

Insofar as plaintiff seeks injunctive relief based on an alleged use-of-force incident that occurred on July 1, 2021, the law is well-settled that a finding of irreparable harm cannot be based solely on past conduct.  *See Haden*, 2016 WL 589703, at *1; *McKenna v. Wright*, No. 01-CV-6571, 2002 WL 338375, *4 (S.D.N.Y. Mar. 4, 2002) ("[S]ince the movant must show that the alleged irreparable harm is imminent, and not remote or speculative, . . . a finding of irreparable harm [cannot be based] solely on past conduct . . . .").  Moreover, plaintiff has failed to offer any evidence showing that he is likely to suffer imminent irreparable harm in the absence of injunctive relief imposed against any of the defendants who remain in this case.  Indeed, plaintiff has not offered any evidence showing that any of the defendants named in the complaint were involved in any alleged use-of-force incidents after July 1, 2021.[7]

Finally, insofar as plaintiff seeks injunctive relief based on alleged meal deprivations,

---

[6]  Plaintiff's statements related to being denied hygiene supplies and confined in an unsanitary cell are also generic and unsupported by any documentary evidence.  Indeed, despite filing numerous grievances between June and November, 2021, where plaintiff complained about a host of issues, not one of them mentions that he was denied hygiene supplies or confined in an unsanitary cell.  *See* Dkt. No. 28 at 22-24, 29-38. Additionally, plaintiff's allegation in his amended complaint that he was not provided with dental hygiene supplies until July 11, 2021, is contradicted by the log book entries filed by defendants, which show that on July 4, 2021, toothpaste and toothbrushes were provided to all the inmates in plaintiff's cell block area.  *See* Dkt. No. 22-4 at 22.  Furthermore, despite representing in his motion papers that the denial of toothpaste and a toothbrush has resulted in tooth decay and tooth aches, plaintiff has failed to offer any documentary evidence showing complaints about his teeth, and the medical records adduced by the defendants do not show that any such complaints were made.  *See* Dkt. No. 23.  Thus, plaintiff has also failed to establish that he is likely to suffer irreparable harm associated with his hygiene in the absence of injunctive relief.

[7]  Plaintiff asserts that he was assaulted on July 12, 2021, and on occasions thereafter, through October 31, 2021.  *See* Dkt. No. 28 at 3.  However, plaintiff has not offered any proof that any of the individuals allegedly involved in the use-of-force incident on July 1 were involved in any of these subsequent use-of-force incidents. Additionally, plaintiff acknowledges that these use-of-force incidents are the subject of another one of his pending actions.  *See* Dkt. No. 28 at 3; *Bradshaw v. Marshall*, No. 21-CV-0826 (N.D.N.Y. filed July 21, 2021).  In that action, plaintiff previously requested injunctive relief based on these use-of-force incidents, and that request was denied by the Honorable Mae A. D'Agostino.  *See Bradshaw v. Marshall*, No. 21-CV-0826, Dkt. No. 44.

he has failed to make a clear showing that he is entitled to the relief requested, or that

extreme or very serious damage will result from a denial of the relief he seeks.  In reaching

this conclusion, the Court rejects as incredible plaintiff's representation that he did not

receive breakfast on July 2 and breakfast and lunch on July 4, 2021, and therefore missed

nine consecutive meals between July 2 and July 4, 2021, which caused him physical harm.[8]

Instead, the Court finds that plaintiff received breakfast on July 2 and breakfast and lunch on

July 4, 2021, which is supported by (1) the log book entries made contemporaneously with

meal rounds, which do not reflect that plaintiff missed breakfast on July 2 and breakfast and

lunch on July 4, 2021, (2) the testimony of Eric Marshall that the absence of a notation

regarding a missed meal means that the meal was delivered and accepted, (3) the absence

of any credible explanation for why only these three meals would not be recorded as refused,

(4) the video recordings produced by plaintiff, and (5) plaintiff's medical records, which show

that he failed to comply with visitation requirements when a medical professional attempted

to meet with him on July 5, 2021.  *See* Dkt. No. 22-4 at 13, 21; Dkt. No. 23 at 11; Hrg. T; Dkt.

---

[8]  In finding plaintiff's hearing testimony on this issue lacking in credibility, the Court relies on the following: (1) plaintiff's unconvincing mannerisms and body language (including, but not limited to, his demeanor, tone of voice, facial expressions, and eye contact or lack thereof) during the relevant portions of his testimony; (2) the inconsistency if not contradiction between plaintiff's testimony that being deprived of the nine meals in question caused him dangerous weight loss and his testimony or sworn representation that (a) currently he weighs 151 pounds, more than 20 pounds less than he weighed during the time in question, and (b) in July of 2020, he went on (and survived) a "hunger strike" (*see Bradshaw v. Annucci*, No. 21-CV-901, Dkt. No. 1 at 13, ¶ 115 (N.D.N.Y. Aug. 11, 2021)); (3) the fact that defendants adduced documentary evidence (e.g., Dkt. Nos. 22-2, 22-3, 22-4, 22-6, Exhibit D-1) and/or witness testimony (i.e., the testimony of Nurse Brenda Holcombe) that credibly undermined the relevant portions of plaintiff's hearing testimony; (4) the inconsistency if not contradiction between plaintiff's testimony that he never once refused a meal and the video footage of the exterior of plaintiff's cell on June 6 (Dkt. No. 58, Exhibit A) and July 7, 2021 (Dkt. No. 58, Exhibit G), which clearly shows that corrections officials offered him meals, which he refused; and (5) the fact that plaintiff was provided with video recordings of the exterior of his cell on July 4, 2021, which is a date he claims he did not receive any meals, yet he produced only one video from that day (Dkt. No. 58, Exhibit F), which does not show even one, let alone more than one, meal deprivation.

No. 58.[9]

The Court also rejects as incredible plaintiff's representation that all of the meals he missed were a result of officials refusing him food.  First, plaintiff was provided with forty-three (43) video recordings of activity outside of his cell, including recordings from July 3 and July 4, 2021.  *See* Dkt. No. 50.  Although plaintiff states that he missed breakfast, lunch, and dinner on July 4, 2021, the only video recording presented to the Court for that day shows plaintiff being extracted from his cell.  *See* Dkt. No. 58, Exhibit F.  If the video recordings from that day supported plaintiff's version of events, he certainly would have produced them.  Second, one of the two video recordings presented to the Court for July 3, 2021, shows an official standing outside of plaintiff's cell with a food tray, and walking away only after plaintiff refused to turn on the lights in his cell.  *See* Dkt. No. 58, Exhibit D.[10]  Third, as noted, the video footage from the exterior of plaintiff's cell on June 6 and July 7, 2021 – dates when plaintiff testified that he was denied meals – clearly shows that corrections officials offered him meals, which he refused.  See Dkt. No. 58, Exhibits A, G.

Additionally, by plaintiff's own account, during the six-week period between October 1 and November 15, 2021, when he submitted his response for filing, he missed a total of only

---

[9]  Video recordings of two meal deliveries in plaintiff's cell block area on July 3, 2021, are consistent with the log book entries for this date, which indicate that plaintiff was not provided with meals.  *Compare* Dkt. No. 22-4 at 17 *with* Dkt. No. 58, Exhibits D and E.  The consistency between the entries and the recording, as well as the reality that corrections officers know that meal deliveries are recorded, solidifies the Court's finding that the log entries are reliable.  Moreover, defendant Hanna provided a sworn statement indicating that she was responsible for delivering breakfast and lunch meals to plaintiff's cell block area on July 2 and July 3, 2021.  Dkt. No. 22-4, ¶¶ 7, 10, 25-26.  The Court can conceive of no logical explanation why this official would accurately record that plaintiff did not receive breakfast and lunch on July 3, 2021, as confirmed by video evidence, yet falsely indicate that he received breakfast on July 2, 2021, particularly when this official was undoubtedly aware that these meal deliveries are recorded on video.

[10]  The other recording from that day appears to show the same female official who asked plaintiff to turn on the light in his cell earlier in the day pass plaintiff's cell when delivering meals.  *See* Dkt. No. 58, Exhibit E.

six meals.  Dkt. No. 28 at 6.  Furthermore, plaintiff's medical records, which cover a time

period through August 17, 2021, are devoid of any evidence showing that plaintiff suffered

any significant adverse health effects from missed meals.  Dkt. No. 23.

In light of the foregoing, plaintiff's First and Second Preliminary Injunction Motions are

denied.[11]

## B. Defendants' Cross-Motion to Revoke Plaintiff's IFP Status

The Court initially found that the allegations in the complaint were sufficient to

plausibly suggest that plaintiff was under imminent danger of physical injury when he signed

his complaint on July 4, 2021.  In reaching this determination, the Court highlighted three key

allegations.  First, the complaint alleged that plaintiff was denied ten out of eleven meals

between July 1 and July 4, 2021, and confined in an unsanitary cell without cleaning

supplies, toothpaste, or a toothbrush for weeks leading up to, and through, this time period.

*See* September 2021 Order at 5-6 (citing Compl. at 2, 5).[12]  Second, the complaint alleged

that plaintiff has experienced "severe stomach pains, physical weakness, headaches,

nuasea [sic], and mental anguish" as a result of missed meals, and "extreme and constant

pain" as a result of tooth decay.  *Id*. at 6 (citing Compl. at 2, 4).  Third, the complaint in

*Bradshaw v. Gordon*, of which the Court took judicial notice, alleged that plaintiff "suffers

from a pre-existing stomach condition" and has been "instructed by medical staff to eat

---

[11]  In reaching this determination, the Court is mindful that plaintiff has filed several letters since responding to defendants' cross-motion wherein he repeatedly complains of meal deprivations and tampering. Dkt. Nos. 52, 53, 60, 62, 64.  These unsworn submissions (and unauthenticated exhibits), however, cannot be considered record evidence in support of the requested relief, nor do they make it "more or less probable" (for purposes of Fed. R. Evid. 401) that plaintiff suffered a deprivation of meals *at the time of the filing of this action* (the relevant time period).

[12]  The complaint also alleged that the named defendants "intend to continue to deprive plaintiff food in complete disregard for the substantial risk of harm to [his] physical and mental health."  Compl., ¶ 40.

15

[unleavened] bread with [his] prescribed medication to help reduce pains and the symptoms[.]" *Id*. at 6 n.4.  Taken together, these allegations plausibly suggested that (1) plaintiff faced a unique risk of serious physical harm if he missed multiple consecutive meals, based on his stomach condition and need to take his prescribed medication with food, (2) this unique risk had not dissipated at the time the complaint was filed, (3) a potential existed for plaintiff to experience a prolonged denial of meals, and (4) plaintiff separately faced a risk of serious physical harm from tooth decay.

As discussed more fully below, the record now before the Court makes clear that (1) plaintiff did not face a unique risk of serious physical harm from missing multiple consecutive meals between July 1 and July 4, 2021, (2) there was no effort to cover up plaintiff's missed meals, (3) plaintiff had access to medical treatment during the relevant time period, which he never pursued for harm associated with either missed meals or tooth decay, (4) plaintiff was never at risk of missing more than nine consecutive meals without receiving mandatory medical treatment, and (5) the alleged harm had dissipated by the time plaintiff submitted his complaint for filing.

### 1. Imminent Danger

As noted, "for a prisoner to qualify for the imminent danger exception, the danger must be present when he *files* his complaint–in other words, a three-strikes litigant is not excepted from the filing fee if he alleges a danger that has dissipated by the time a complaint is filed." *Pettus v. Morgenthau*, 554 F.3d 293, 296 (2d Cir. 2009) (emphasis added); *see also Polanco v. Hopkins*, 510 F.3d 152 (2d Cir. 2007) (finding that imminent danger claims must be evaluated at the time the complaint is filed, rather than at the time of the events alleged).

16

"Under the 'prison mailbox rule,' the date of filing is deemed to be the date that the prisoner–plaintiff delivered his complaint to a prison guard for mailing." *Chavis v. McCulloch*, No. 9:20-CV-0435 (DNH/CFH), 2020 WL 5051571, at *1 (N.D.N.Y. Aug. 27, 2020). Ordinarily, the date of delivery to a prison guard is presumed to be the date that the complaint was signed. *Id.* (citing *Houston v. Lack*, 487 U.S. 266, 276 (1988)).

Insofar as the complaint alleges that plaintiff faced an ongoing risk of harm at the time of filing as a result of meal deprivations, as discussed above, the credible evidence now before this Court shows that (1) plaintiff missed only five consecutive meals, and a total of seven out of twelve meals between July 1 and July 4, 2021, and (2) on the day the complaint was signed, plaintiff received both breakfast and lunch.  In other words, at the time of filing, plaintiff was aware that he did not face an imminent risk of serious physical harm.  However, plaintiff nevertheless submitted a misleading sworn complaint to the Court suggesting that he remained at risk of harm.  *See* Compl., ¶ 40.

While such allegations present Rule 11 issues, more importantly for purposes of defendants' motion to revoke, there can be no doubt that plaintiff did not face an *imminent risk* of serious physical harm due to a continuous deprivation of food over a three-and-a-half-day period when he submitted his complaint to a corrections officer (and thus "filed" it with the Court) on the morning of July 5, 2021.  Instead, plaintiff experienced only past harm, which had dissipated by the time he delivered his complaint for filing.

Insofar as plaintiff seeks to base his "imminent danger" claim on allegations that he was deprived of dental hygiene supplies, the log entries for the period July 1 to July 5, 2021, show that toothpaste and toothbrushes were distributed to inmates in plaintiff's cell block area on July 4, 2021.  Dkt. No. 22-4 at 22.  Moreover, the medical records adduced by

defendants do not reflect that plaintiff ever complained about tooth decay or other harm associated with his teeth.  *See* Dkt. No. 23.  In addition, plaintiff has not offered any documentary evidence in support of his allegations that (1) he was denied a toothbrush and toothpaste between June 11 and July 4, 2021, and (2) his teeth began to decay as a result. Indeed, plaintiff failed to address this issue in either his response to defendants' cross-motion to revoke his IFP status or testimony during the evidentiary hearing.  Thus, the Court also has no basis to conclude that plaintiff faced an *imminent risk* of serious physical harm due to a continuous deprivation of dental hygiene supplies in the weeks leading up to when he submitted his complaint to a corrections officer (and thus "filed" it with the Court) on the morning of July 5, 2021.[13]

Lastly, insofar as plaintiff seeks to base his "imminent danger" claim on allegations that he was assaulted on July 1, 2021, the allegations in the complaint do not plausibly suggest that at the time of filing, plaintiff faced a continued risk of harm from the officials allegedly involved in the use-of-force events.  Rather, plaintiff's allegations of harm associated with the alleged use-of-force incident are entirely backward-looking.[14]  Thus, the Court also has no basis to conclude that plaintiff faced an *imminent risk* of serious physical

---

[13]  Of course, plaintiff also cannot base his imminent danger claim on allegations related to the denial of dental hygiene supplies because his underlying Eighth Amendment claim, which was brought against only defendants Woody and Uhler, was dismissed in the September 2021 Order.  *See Pettus v. Morgenthau*, 554 F.3d 293, 296, 298-99 (2d Cir. 2009) ("§ 1915(g) allows a three-strikes litigant to proceed [in forma pauperis] only when there exists an adequate nexus between the claims he seeks to pursue and the imminent danger he alleges. . . . In deciding whether such a nexus exists, [courts must] consider (1) whether the imminent danger of serious physical injury that a three-strikes litigant alleges is fairly traceable to unlawful conduct asserted in the complaint and (2) whether a favorable judicial outcome would *redress* that injury." (emphasis in original)).

[14]  The amended complaint alleges that one of the "Doe" officials involved in the use-of-force event on July 1, 2021, stated, while subjecting plaintiff to unwanted force, "You been f**cked in this jail before. It's more to come."  Am. Compl. at 4. Setting aside the generic nature of this purported threat, plaintiff does not allege that this official, or anyone else, threatened or attempted to harm him physically in the days between this incident and the filing of the complaint.  Moreover, defendant Phillips, who was allegedly involved in this use-of-force incident, testified that he had never previously encountered plaintiff.  *See* Hrg. T.

harm at the time of filing due to the alleged use-of-force event that occurred three days earlier. *See Malik*, 293 F.3d at 562-63 ("Because § 1915(g) uses the present tense in setting forth the imminent danger exception, it is clear from the face of the statute that the danger must exist at the time the complaint is filed[,]" and that the exception does not apply to "those harms that had already occurred." (internal quotation marks and citations omitted)); *Lewis v. Sullivan*, 279 F.3d 526, 531 (7th Cir. 2002) (The imminent danger exception is available "for genuine emergencies," where "time is pressing" and "a threat . . . is real and proximate."); *Martin v. Shelton*, 319 F.3d 1048, 1050 (8th Cir. 2003) ("[T]he exception focuses on the risk that the conduct complained of threatens continuing or future injury, not on whether the inmate deserves a remedy for past misconduct."); *see also Randolph v. New York State Corr. Facility*, No. 9:19-CV-1547 (BKS/CFH), 2020 WL 132273, at *3 (N.D.N.Y. Jan. 13, 2020) (finding that corrections officer's alleged assault on the plaintiff on December 2, 2019, failed to plausibly suggest that plaintiff was in "imminent danger" when he filed his complaint on December 16, 2019, because the complaint did not allege that plaintiff "feared 'physical injury' from anyone when he signed his Complaint"); *Burgess v. Conway*, 631 F. Supp. 2d 280, 283 (W.D.N.Y. 2009) ("[The] [p]laintiff has not made a sufficient showing of imminent physical danger to qualify for the exception. He simply alleges that he has been assaulted in the past, and there are no allegations in the complaint indicating that another attack is imminent."); *Robinson v. Mawer*, No. 08-CV-0353, 2008 WL 1986239, at *2 (W.D. Mich. May 2, 2008) (allegation that plaintiff had been assaulted by prison guards on April 8, 2008, coupled with allegation that plaintiff was not able to "defend himself" from the prospect of future such assaults, did not constitute an allegation that plaintiff was in "imminent danger" as of the date of filing of plaintiff's complaint, which occurred when complaint was signed

19

three days later, on April 11, 2008).

In short, the record now before the Court makes clear that plaintiff did not face an

ongoing risk of future harm at the time he filed his complaint in this action.  For this reason

alone, plaintiff's IFP status must be, and is, revoked.[15]

### 2. Serious Physical Injury

Even if the Court were to assume that plaintiff suffered discomfort at the time of filing

because of the meals he missed, as noted, a three strikes prisoner must show that he faced

"an imminent danger of serious physical injury" at the time he submitted his complaint for

filing in order to proceed IFP.  42 U.S.C. § 1915(g).  Although the term "serious physical

injury" is not expressly defined in Section 1915(g), several courts have made clear that

something more than temporary discomfort associated with a limited number of missed

meals is necessary to satisfy the requirement.  *See, e.g., Daker v. Bryson*, 784 Fed. App'x

690, 693 (11th Cir. Aug. 8, 2019) (per curiam) (finding that a plaintiff alleging denial of

nutritionally adequate food and weight loss did not establish imminent danger); *Sims v.

Caruso*, No. 11-CV-92, 2011 WL 672232, at *2 (W.D. Mich. Feb. 18, 2011) ("The fact that

Plaintiff has lost some weight, standing alone, falls short or establishing serious physical

injury"); *Hernandez v. Ventura County*, No. 09-CV-7838, 2010 WL 3603491 (C.D. Cal. July

27, 2010) (finding that a claim that food practices at jail caused inmate to lose a significant

amount of weight was insufficient to demonstrate "serious physical injury" under § 1915(g)

where the inmate did not allege that such practices caused or threaten to cause him to go

hungry, to suffer malnutrition, or to suffer any negative health consequences), *report and*

---

[15]   As discussed below, there is also no credible evidence in the record showing that plaintiff continued to suffer from injuries based on the aforementioned past harm, for which he sought and was refused treatment at the time of filing.

*recommendation adopted by* 2010 WL 3603485 (C.D. Cal. Sept. 6, 2010); *Sayre v. Waid*, No. 08-CV-142, 2009 WL 249982, at *2 (N.D. W.V. Feb. 2, 2009) ("[W]eight loss, in and of itself, is not indicative of a serious physical injury...."); *Mateo v. Vosbrink*, No. 06-CV-115, 2006 WL 2038499, at *2 (N.D. Fla. July 18, 2006) ("The fact that Plaintiff is constantly hungry and suffers hunger pangs does not constitute a serious physical injury...."); *cf. Jackson v. Marks*, 722 Fed. App'x 106, 107 (2d Cir. 2018) (concluding that inmate-plaintiff's allegations of "missing approximately half of his weekly meals" over a period of approximately one year, which "caused him to suffer weight loss, stress, and hunger[,]" were sufficient to "meet the exception to the three-strikes rule because the allegations of deprivations of food were prolonged and substantial" (emphasis added)); *Taylor v. Walker*, No. 07-CV-706, 2007 WL 4365718, at *2 (S.D. Ill. Dec. 11, 2007) ("Because Plaintiff may not create the 'imminent danger' required by § 1915(g) by commencing a hunger strike and because there is no indication that Plaintiff's hunger strike causes 'serious physical injury'-due to the timely intervention of prison officials and Plaintiff's voluntary cessation of said strikes-Plaintiff has not satisfied the requirements of § 1915(g) so as to proceed in forma pauperis in this action.").

In support of their cross-motion, defendants have adduced record evidence showing the following: (1) plaintiff refused each of the meals that he did not receive between July 1 and July 4, 2021; (2) nurses made rounds in plaintiff's cell block area between July 1 and July 5, 2021; and (3) DOCCS requires that any inmate who misses nine consecutive undergo a medical evaluation.  Dkt. No. 22-2; Dkt. No. 22-3; Dkt. No. 22-4; Dkt. No. 22-6; Dkt. No. 23.

In response, plaintiff attempts to refute some of these facts, and minimize the significance of others.  For example, plaintiff states that the named defendants falsely

recorded in the log books that he refused meals when in actuality these officials refused to provide those meals to him, and failed to properly document that he missed certain meals. Dkt. No. 28 at 4-5.  Plaintiff also states that, although nurses made rounds through his cell block area, when medical staff walked the gallery to distribute medication and collect sick call slips on July 4, 2021, he "shouted" that he had not eaten for three consecutive days, but was prevented by unidentified "officers" from communicating with medical staff.  *Id*. at 5.  In addition, plaintiff states that on July 5, 2021, the nurse that walked the gallery did not stop at his cell for sick call or to check on his well-being.  *Id*.

As noted, the Court finds plaintiff's claim that the log entries were falsified to be entirely incredible.  In addition, insofar as plaintiff has attempted to create a factual dispute regarding an inability to report missed meals to medical staff and/or obtain medical care, the Court declines to accept plaintiff's statement that he was prevented from communicating with medical staff between July 1 and July 5, 2021, for at least two reasons.

First, the log book entries expressly state that nurses made rounds between July 1 and July 5, 2021.  Dkt. No. 22-4 at 8-26 (noting morning and evening "nurse on rounds", "meds on rounds", "med run", and "Jackson . . . refuse meds").  It strains credulity to believe that corrections officers would have inconsistently prevented nurses from speaking to inmates during rounds, and then falsely logged successful medication "runs" and an inmate's refusal of medication.

Second, the ambulatory health records submitted by defendants show that plaintiff received medical treatment on July 1 and July 2, 2021, and a medical professional attempted to visit plaintiff at his cell in response to a sick call request on the morning of July 5, 2021. Dkt. No. 23 at 11-12.  The latter record also notes that plaintiff was "non-compliant" with

visitation procedures.  *Id*. at 11.  In other words, plaintiff was undoubtedly able to communicate with medical staff between July 1 and July 5, 2021.

Similarly, insofar as plaintiff has attempted to create a factual dispute regarding medical staff's willingness to treat him, the Court declines to accept plaintiff's statement that nurses ignored his requests for treatment on July 4 and July 5, 2021, for several reasons.

First, plaintiff's testimony that a nurse ignored his verbal complaints on July 4, 2021, was entirely incredible.[16]  Second, the Court can conceive of no logical explanation why medical staff would have been willing to render treatment to plaintiff on July 1 and July 2, 2021, as documented, yet decided to ignore his requests for treatment two days later.  Third, and relatedly, the Court can conceive of no logical explanation why a medical professional would have documented that plaintiff refused to comply with visitation protocol on July 5, 2021, if that person truly sought to deny plaintiff medical treatment.  Fourth, the documentation regarding the visit on that day indicates that plaintiff refused to turn on the lights in his cell.  *See* Dkt. No. 23 at 11.  This statement is consistent with video evidence submitted by plaintiff, which shows that he did not turn on the lights in his cell when requested on July 3, 2021.  *See* Dkt. No. 58, Exhibit D.

In light of the foregoing, even assuming that plaintiff was denied meals between July 1

---

[16]  In finding plaintiff's hearing testimony on this issue lacking in credibility, the Court relies on the following: (1) plaintiff's unconvincing mannerisms and body language (including, but not limited to, his demeanor, tone of voice, facial expressions, and eye contact or lack thereof) during the relevant portions of his testimony; (2) the inconsistency if not contradiction between plaintiff's testimony that he wished to speak to a medical professional on July 4, 2021, and plaintiff's medical records showing that he refused to comply with visitation protocol when a medical professional attempted to visit him on the morning of July 5, 2021 (Dkt. No. 23 at 11); (3) the fact that plaintiff was provided with video recordings of the exterior of his cell on July 4, 2021, which is a date a nurse allegedly ignored his verbal complaints, yet he produced only one video from that day (Dkt. No. 58, Exhibit F), which does not show any such event.

and July 4, 2021,[17] the Court has no reasonable basis to conclude from the pleadings and record evidence adduced by the parties that he was unable to communicate any adverse health effects associated with missed meals to medical staff.  Moreover, Nurse Brenda Holcombe, who worked at Upstate Correctional Facility during the relevant time period, testified that, if an inmate advises a nurse that he is in danger, the nurse is required to report the inmate's concern "up the chain[.]"  Hrg. T.  Nurse Holcombe further testified that, if an inmate expresses concern for their safety to a nurse, or advises a nurse that he is not eating or being fed, the matter is documented in the inmate's medical records.  *Id*.  Thus, according to Nurse Holcombe (whose testimony the Court finds credible), had plaintiff expressed concerns for his health or safety, or complained about not being fed, the issue would have been documented and addressed.

Plaintiff's decision not to express concerns to medical staff regarding his health – or to comply with visitation procedures on July 5, 2021 – is therefore telling as to his state of mind at the time, as is his medical file and hearing testimony, which, together show that he voluntarily stopped taking his prescribed stomach medication on June 4, 2021–after it was ordered for him the previous day–based on his belief that the medication was "not helping[.]"  Dkt. No. 23 at 13; Hrg. T.[18]  These facts make clear that plaintiff (1) did not need food to take

---

[17]  The Court notes that Plaintiff has persistently argued that proof exists that he was denied meals between July 1 and July 4, 2021, in the form of proof that he was denied meals at times *after* those dates. However, generally, subsequent conduct is of little if any relevance (under Fed. R. Evid. 401) in proving prior conduct.  *See* Fed. R. Evid. 404(a)(1) ("Evidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait."); Fed. R. Evid. 404(b)(1) ("Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.."); *cf.* Fed. R. Evid. 407 (treating subsequent remedial measures as not admissible to prove culpable conduct).

[18]  The recording of plaintiff's belief that his medication was "not helping" is consistent with his allegations made in a different complaint filed after this action was commenced.  More specifically, in plaintiff's pursuit of claims unrelated to the claims asserted in this action, he swears (in a verified complaint) that he engaged

his prescribed medication and/or did not need his prescribed medication to alleviate a serious stomach condition when he missed meals between July 1 and July 4, 2021, (2) did not believe that his missed meals presented a condition of urgency worthy of reporting to medical staff and/or serious enough to comply with visitation protocols, and (3) had not suffered any serious adverse health consequences as a result of the meals he missed.  In other words, it is now clear to the Court that plaintiff did not face a unique risk of *serious physical harm* at the time he commenced this action, regardless of the number of meals he missed or the reason for missing them.

Moreover, the DOCCS Directive on Inmate Hunger Strikes indicates that an inmate who voluntarily refuses to eat nine consecutive meals is deemed to be "on a hunger strike." Dkt. No. 22-4 at 30.  The Directive further indicates that an inmate on a hunger strike is "referred to Health Services and to the [Office of Mental Health] staff for counseling and clinical assessment to determine the cause of the inmate's refusal to eat."  *Id*. at 31.[19]

Because defendants logged plaintiff's missed meals, he was never at risk of missing more than nine consecutive meals before receiving mandatory medical treatment.[20]  Thus, it is also now clear to the Court that this is not a case of a potential cover up of meal

---

(apparently voluntarily) in a hunger strike over a period of five days in July of 2020 at Mid-State Correctional Facility.  *Bradshaw v. Annucci*, No. 21-CV-901, Dkt. No. 1 at 13, ¶ 115 (N.D.N.Y. Aug. 11, 2021).  During this time, by his own admission, he had been prescribed the same medication that he claims needed to be taken with food to "reduce pains and the symptoms."  Compl., ¶ 17; Dkt. No. 21 at 13, ¶ 73.  The Court notes that this hunger strike undermines plaintiff's allegation that, when he filed his complaint in this action less than a year later, he suffered from a pre-existing stomach condition that required him to take medication *with food*.

[19]  Nurse Holcombe testified that, at Upstate Correctional Facility, when an inmate misses nine consecutive meals, he receives "a full assessment", which includes checking vital signs, skin, blood sugar, and weight, as well as "a mental health referral to try to assess why this is going on."  Hrg. T.  Nurse Holcombe further testified that the purpose of the extensive evaluation is "to make sure [the inmate is] not in danger of being sick from not eating."  *Id*.

[20]  As noted above, plaintiff's statement that he was denied nine consecutive meals between July 2 and July 4, 2021, and that only certain of the deprivations were logged, is completely incredible.

deprivations that could have continued for a prolonged period of time, as the allegations in the complaint suggest.

For all of these reasons, based on the record evidence presented by the parties, the Court finds that, at the time plaintiff filed his complaint (and even at the time he signed it), he did not face an imminent risk of serious physical injury. As a result, revocation of plaintiff's IFP status is appropriate. Accordingly, defendants' cross-motion to revoke plaintiff's IFP status is granted.

## V.     CONCLUSION

**WHEREFORE**, it is hereby

**ORDERED** that plaintiff's First Preliminary Injunction Motion (Dkt. No. 4) and Second Preliminary Injunction Motion (Dkt. No. 10) are **DENIED** for the reasons stated above; and it is further

**ORDERED** that defendants' Cross-Motion to Revoke plaintiff's IFP status (Dkt. No. 22) is **GRANTED** for the reasons stated above; and it is further

**ORDERED** that plaintiff's IFP status is **REVOKED**; and it is further

**ORDERED** that, if plaintiff wishes to proceed with this action, he must pay the Court's filing fee of four hundred and two dollars ($402.00) in full within **THIRTY (30) DAYS** of the date of this Decision and Order; and it is further

**ORDERED** that, if plaintiff timely pays the filing fee in full, the Clerk of the Court shall return the file to this Court for review; and it is further

**ORDERED** that, if plaintiff fails to timely pay the filing fee in full, the Clerk shall enter judgment **DISMISSING** this action without prejudice, without further order of this Court; and it

is further

   **ORDERED** that the Clerk serve a copy of this Decision and Order on the parties.

**IT IS SO ORDERED.**

Dated: February 18, 2022
   Syracuse, NY

Hon. Glenn T. Suddaby
Chief U.S. District Judge